UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RUSHANE RICHIE SIMMS<br>Petitioner,<br>-against-<br>PAUL ARTETA, et al.,<br>Respondents. | 26-cv-5712 (LJL)<br>MEMORANDUM AND ORDER |

LEWIS J. LIMAN, United States District Judge:

Petitioner Rushane Richie Simms ("Simms" or "Petitioner") has petitioned the Court for a writ of habeas corpus under 28 U.S.C. § 2241. For the following reasons, the Petition is conditionally GRANTED.

## BACKGROUND

Simms is a citizen of Jamaica who arrived in the United States in or around December 2022 with his wife and their minor daughter to seek asylum. Dkt. No. 1 ¶ 15. He and his family were paroled into the county under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(d)(5)(A), and served with a Notice to Appear that charged him as inadmissible under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*; Dkt. Nos. 10-1, 10-2. His parole documents state that he was paroled until March 1, 2023. Dkt. No. 10-2. Since entering the country, Petitioner has complied with all conditions of his release and resided in Queens Village, N.Y. up until the time of his detention. *Id.* ¶ 16.

On January 22, 2026, Petitioner was arrested and charged with first-degree criminal contempt for violation of an order of protection, second-degree aggravated harassment for threatening by telephone, and second-degree aggravated harassment for threat of physical or property harm. Dkt. No. 12-2. That same day, the Department of Homeland Security ("DHS")

issued an immigration detainer to the New York Police Department ("NYPD"). Dkt. No. 10-5. The NYPD did not honor the detainer and released Petitioner without notifying DHS. Dkt. No. 11 ¶ 14. The criminal case against Petitioner was dismissed and sealed on April 24, 2026 and did not result in any criminal conviction. Dkt. No. 12-1.

On May 18, 2022, DHS issued a warrant for Petitioner's arrest which included a signed statement by Immigration Officer Nicholas Gonzalez that he had determined "there is probable cause to believe that Simms, Rushane is removable from the United States." Dkt. No. 10-6. On July 3, 2026, Petitioner was working at Walgreens when he was arrested by officers with United States Immigration and Customs Enforcement ("ICE"), who served the arrest warrant on him. Dkt. No. 11 ¶¶ 1, 17; Dkt. Nos. 10-6, 10-7. Petitioner was detained at 26 Federal Plaza where ICE conducted an initial custody determination pursuant to 8 US.C. § 1226(a) and determined that he posed a danger to society because he is a person of interest in a murder case in Jamaica. Dkt. No. 11 ¶ 18; Dkt. No. 10 at 2; *see also* Dkt. No. 10-8 (custody determination).

Petitioner filed his Petition for a writ of habeas corpus on July 6, 2026. Dkt. No. 1. That day, the Court issued an order to answer and scheduled a conference for July 9, 2026. Dkt. Nos. 4. The Government filed a letter on July 8, 2026, taking the position that Petitioner is detained pursuant to 8 U.S.C. § 1225(b)(2)(A). Dkt. No. 7. At the conference on July 9, 2026, the Court set a briefing schedule for the Petition. The Government filed a letter answer to the Petition on July 10, 2026, with exhibits and the declaration of Noah Essa. Dkt. Nos. 10–11. Petitioner responded on July 14, 2026, with exhibits and declarations from individuals attesting to Petitioner's good character. Dkt. No. 12. Neither party requested a hearing or oral argument.

## DISCUSSION

The Government asserts that Petitioner is detained under the mandatory detention provision of 8 U.S.C. § 1225(b)(2)(A) because he was detained shortly after entering the United States and subsequently released on parole pursuant to 8 U.S.C. § 1182(d)(5). Dkt. No. 7 at 1–2.

The Court previously addressed this argument in *Qasemi v. Francis*, 2025 WL 3654098 (S.D.N.Y. Dec. 17, 2025). The facts of *Qasemi* parallel those here: Qasemi was charged as inadmissible and paroled into the country under Section 1182(d)(5)(A) and his parole expired after a set period of time, in that case one year. 2025 WL 3654098, at *1–2. After his parole expired, Qasemi appeared for an ICE check-in at 26 Federal Plaza where he was apprehended by ICE officers and arrested pursuant to an I-200 Warrant of Arrest of Alien. *Id.* at *2.

The Court rejected the Government's argument that Qasemi was subject to mandatory detention under Section 1225(b)(1) once his parole expired. *Id.* at *5. The Court first determined that while Qasemi was an "applicant for admission" he was not a noncitizen "arriving in the United States" within the meaning of Section 1225(b)(1)(A), reasoning that "[i]t would try any plain understanding of the term arrival to classify an individual like Qasemi who has lived and worked in the United States for over a year prior to his re-detention as an arriving alien" and finding this plain understanding confirmed by the statutory context. *Id.* at *6–7. The Court then determined that Qasemi did not fall within the other category of noncitizens subject to mandatory detention under Section 1225(b)(1)(A)(iii) because he had been paroled into the United States. *Id.* at *8–9. The Court concluded that "[t]he statute is [] most sensibly read to exclude from the expedited removal provisions in Section 1225(b)(1) [and attendant mandatory detention] those noncitizens who were admitted to the United States, were at any time paroled into the United States, or who resided in the United States for over two years." *Id.* at *9.

Accordingly, "any determination as to Qasemi's detention must be conducted under the discretionary framework of Section 1226(a), which 'governs the process of arresting and detaining noncitizens who have already entered the United States pending their removal." *Id.* at *12 (quoting *Tumba v. Francis*, 813 F. Supp. 3d 394, 399 (S.D.N.Y. 2025). In *Qasemi*, there was "no evidence or argument" that the discretion required under Section 1226(a) was exercised, the Court determined that Qasemi's detention was unlawful under the INA and that the Government violated Qasemi's procedural due process rights. *Id.* at *14. The Court therefore ordered Qasemi's release. *Id.*

The Government does not contest that if the Court adhered to its prior opinion in *Qasemi*, Petitioner's detention here would be governed by Section 1226(a), not Section 1225. Dkt. No. 10 at 5. The Government instead argues that following the Second Circuit's decision in *Barbosa da Cunha v. Freden*, 175 F.4th 61 (2d Cir. 2026), the Court should reconsider its holding that an individual paroled into the country is no longer subject to mandatory detention under Section 1225. *Id.* at 5. The Government argues that the Second Circuit's decision limited Section 1225(b)(2)(A)'s application to "those noncitizens who present themselves at a port of entry for admission, or who cross the physical border into the United States but are apprehended at the 'threshold of initial entry,'" *id.* at 3 (quoting *Cunha*, 175 F.4th at 75), and that application applies to Petitioner because he was apprehended at the initial point of entry, prior to release on parole, *id.* at 3. The Government acknowledges that several district courts have rejected a similar argument following *Cunha*, *id.* at 4 (citing *J.H.F. v. Arteta*, 2026 WL 1724066, at *5–6 (S.D.N.Y. June 14, 2026); *Hernandez Villasmil v. Blanche*, 2026 WL 1235068, at *5–6 (N.D.N.Y. May 5,

2026)), but points to one opinion in this district that supports its view, *Rana v. Genalo*, 2026 WL 1863815, at *5–7 (S.D.N.Y. June 29, 2026).

The Government has identified no persuasive reason for the Court to depart from its prior holding in *Qasemi*. The Second Circuit in *Cunha* reaffirmed *Qasemi*'s reasoning that "Section 1225(b)(2)(a) applies only to a noncitizen who is both an 'applicant for admission' and 'seeking admission.'" 175 F.4th at 74; *see Qasemi*, 2025 WL 3654098, at *5. Thus, an individual, such as the petitioner in *Cunha*, who is an applicant for admission but who entered the country years prior and is "now seeking only relief from removal" is not seeking admission and is not subject to detention under Section 1225. 175 F.4th at 74. Petitioner here matches this description: he is an applicant for admission who has resided in the United States for over three years and is "now seeking only relief from removal." *Id.*

The Government argues that Petitioner's status as an individual whose parole expired distinguishes his status from the petitioner in *Cunha*, pointing to the Second Circuit's citation to *Leng May Ma v. Barber*, 357 U.S. 185, 189 (1958). However, the Second Circuit's citation to *Leng May Ma* cannot carry the weight the Government would assign to it. As an initial matter, the Government agrees that through this citation the Second Circuit did not explicitly hold that individuals paroled into the United States are subject to Section 1225. Dkt. No. 10 at 3. More importantly, *Leng May Ma* itself does not counsel towards reconsideration of *Qasemi*. The Supreme Court in *Leng May Ma* answered whether a noncitizen paroled into the United States would be considered "legally 'within the United States'" and held that answer to be no. 357 U.S. at 190; *id.* at 188 ("Our question is whether the granting of temporary parole somehow effects a change in the alien's legal status."). Such a holding does not contradict *Qasemi*: a noncitizen

paroled into the country remains an "applicant for admission" who has "not been admitted" into the United States. *Qasemi*, 2025 WL 3654098, at *6. Moreover, *Leng May Ma* addressed a question that was "wholly one of statutory construction," 357 U.S. at 187, and interpreted statutory language that has since "significant[ly] change[d]," *Escalona v. Warden, MDC Brooklyn*, 2026 WL 2018505, at *3 (E.D.N.Y. July 13, 2026) (quoting *United States v. Pantin*, 155 F.3d 91, 92 (2d Cir. 1998)). Most significantly, the statutory language changed with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") in 1996, which amended portions of the INA, including by "replacing the definition of 'entry' with that for 'admission.'" *Cunha*, 175 F.4th at 72 (quoting *Cruz-Miguel v. Holder*, 650 F.3d 189, 197 (2d Cir. 2011)). The Supreme Court's holding in 1958 that an individual paroled into the United States has not entered the country within the meaning of the INA is not inconsistent with *Qasemi*'s holding that an individual paroled into the United States has not been "admitted." *Leng May Ma* does not answer whether, under the current iteration of the INA, an individual previously paroled into the United States is "seeking admission."

Judge Cronan's decision in *Rana*, on which the Government relies, also does not counsel in favor of departing from *Qasemi*. Judge Cronan disagrees with *Qasemi* in its interpretation of the legal significance of the expiration of parole. 2026 WL 1863815, at *6. *Rana* interpreted Section 1182(d)(5)(A) of the INA, which provides that upon termination of parole the noncitizen "shall forthwith . . . be returned to the custody from which he was paroled," to mean that upon expiration, the noncitizen is treated, through a legal fiction, as though he were again standing at the border seeking admission, regardless of the amount of time he has resided in the country. *Id.* at *6. This Court addressed the legal effect of the expiration of parole in *Qasemi*. Section

1182(d)(5)(A)'s provision that upon termination of parole the noncitizen "shall forthwith be returned to the custody from which he was paroled" does not mandate that the noncitizen shall be returned to mandatory detention under Section 1225. *Qasemi*, 2025 WL 3654098, at *9–10. The use of "custody" does not necessitate physical detention, but rather signifies that an individual whose parole has expired loses the freedoms associated with parole status and is returned to the custody of DHS. *Id.* at *10–11. Judge Cronan's decision in *Rana* does not address that reasoning, and the Government has supplied no argument to counter the Court's prior interpretation of Section 1182(d)(5)(A).

Having established that the Court adheres to its prior holding in *Qasemi*, Petitioner's detention is governed by Section 1226(a) rather than Section 1225(b)(1). Thus, Petitioner was entitled to "an initial discretionary determination as to whether [he] should [have been] detained or released, and the opportunity for a bond hearing upon such detention." *Qasemi*, 2025 WL 3654098, at *5 (citing 8 C.F.R. § 1236(d)(1)). This case departs from *Qasemi* in that it appears that Petitioner was given a discretionary determination. ICE initially was of the view that Petitioner's detention was governed by Section 1226(a). ICE issued a detainer following Petitioner's January 2026 arrest and ICE treated Petitioner as though he were subject to detention under Section 1226 prior to the Government's later determination that Petitioner was subject to detention under 1225. The record thus indicates that ICE "may have exercised some discretion in detaining Petitioner." *Sharifzoda v. Orange Cnty. Jail*, 2026 WL 851378, at *2 (S.D.N.Y. Mar. 27, 2026); *see O.F.C. v. Almodovar*, 2026 WL 74262, at *13 (S.D.N.Y. Jan. 9, 2026) (ordering bond hearing where petitioner failed to meet his burden of demonstrating that the Government detained him without any exercise of discretion). Petitioner has requested a bond hearing, but

has not been afforded one. Dkt. No. 12 at 4. Therefore, a bond hearing conducted by an immigration judge is the appropriate remedy.

Petitioner requests that, should the Court determine a bond hearing is the appropriate remedy, the Court order a bond hearing at which Respondents bear the burden of establishing danger or flight risk by clear and convincing evidence. Dkt. No. 12 at 4. This Court has previously held that noncitizens discretionarily detained pursuant to Section 1226(a) have a due process right to a bond hearing at which the Government bears the burden of justifying continued detention by clear and convincing evidence. *See O.F.C.*, 2026 WL 74262, at *5 (citing *Garcia v. Decker*, 448 F. Supp. 3d 297, 300 (S.D.N.Y. 2020)). Respondents here do not argue that the Second Circuit's decision in *Velasco Lopez v. Decker*, 978 F.3d 842 (2d Cir. 2020) alters that decision, or otherwise oppose Petitioner's request for a burden-shifted bond hearing. Dkt. No. 12 at 4; *see* Dkt. No. 13 (providing Government opportunity to respond to Petitioner's reply); *see also Uluan Lopez v. Mullin*, 2026 WL 1493531, at *1 (S.D.N.Y. May 28, 2026) (ordering burden-shifted bond hearing upon consent of parties). Accordingly:

The Petition is conditionally GRANTED. Petitioner is hereby ordered released unless within seven days—that is, by July 24, 2026—the Government holds a bond hearing before an immigration judge at which the Government bears the burden of establishing by clear and convincing evidence that Petitioner is either a danger to the community or a flight risk. In considering dangerousness and/or risk of flight and in setting any bond amount, the immigration judge must meaningfully consider alternatives to detention and Petitioner's ability to pay a bond. Petitioner shall also be entitled to issue subpoenas prior to the hearing and to confront and cross-examine adverse witnesses at the hearing.

To avoid the relief in this Order becoming illusory, the Government is enjoined from exercising an automatic stay should the immigration judge determine that release on bond is appropriate. The Government is further enjoined from invoking 8 U.S.C. § 1225 as a basis for Petitioner's detention before the immigration judge or as grounds for an appeal to the Board of Immigration Appeals.

The Court retains jurisdiction over this matter to ensure compliance with its Order and, should it determine that its Order has not been complied with, also retains jurisdiction to grant Petitioner the full relief he has sought (i.e., release). The Government shall inform the Court of the result of the bond hearing and, unless Petitioner is ordered released at such hearing, shall provide to the Court a transcript of the hearing within two days of it taking place.

SO ORDERED.

Dated: July 17, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge